CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 28 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| DONALD WAYNE SHIPE, | ) | |
| Petitioner, | ) | Civil Action No. 7:09-cv-00454 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| TRACY RAY, WARDEN, | ) | By: Samuel G. Wilson |
| Respondent. | ) | United States District Judge |

Donald Wayne Shipe brings this 28 U.S.C. § 2254 habeas petition challenging his convictions in the Circuit Court of Frederick County for first-degree murder and use of a firearm in the commission of a felony. Shipe raises a host of constitutional claims. The Virginia courts found that Shipe's sufficiency of the evidence and ineffective assistance of counsel claims failed on the merits and that his remaining claims were procedurally barred from habeas review. The court finds that the Supreme Court of Virginia's rejections of his sufficiency of the evidence and ineffective assistance of counsel claims were not contrary to, or an unreasonable application of, clearly established federal law, and they were not based on an unreasonable determination of the facts. The court also finds that Shipe's procedural default of his remaining claims is un-excused. Therefore, the court grants respondent's motion to dismiss.

## I.

A jury in the Circuit Court of Frederick County found Shipe guilty of first degree murder and use of a firearm in the commission of that offense, and the court sentenced him to 28 years in prison.[1]

---

[1] The court notes that Shipe was tried twice on his convictions; however, the verdicts from the first trial were set aside due to "a violation of constitutional dimension." All facts and claims discussed herein pertain to Shipe's second trial unless otherwise noted.

According to the evidence at trial, Shipe and the victim argued at Shipe's house with the victim's son present. The victim directed her ten-year-old son to go to the neighbor's house and call the police. When the boy returned, he saw Shipe run from the house, jump in his car, and drive off. When the boy entered the house, he found his mother had been shot twice in the head. A doctor later testified that the first wound, which entered through her chin and continued through the roof of her mouth, was a "distant range wound," meaning the gun had been shot from a distance. The

Shipe appealed his conviction to the Court of Appeals of Virginia, claiming, *inter alia*, that the evidence at trial was insufficient to support his first-degree murder conviction and that his due process rights were violated when the Commonwealth failed to produce exculpatory evidence. The court found otherwise and denied his petition. Shipe appealed that denial to the Supreme Court of Virginia, and the court refused his petition. Shipe then filed a state habeas petition in the Supreme Court of Virginia alleging that:

1. Trial counsel was ineffective for failing to investigate and prepare adequately for trial;

2. The trial court denied Shipe due process by refusing to grant a continuance or appoint an investigator;

3. Trial counsel was ineffective in failing to request exculpatory evidence from the prosecutor;

4. The trial court denied Shipe due process by not requiring the Division of Forensic Science to comply with the court's order for toxicology screening of the decedent's blood;

5. The prosecution withheld exculpatory evidence, namely bullet fragments and hair follicles, that were introduced at trial;

6. Trial counsel was ineffective for failing to properly review the Commonwealth's evidence and, therefore, for failing to notice and subsequently test the hair follicles which were later introduced at trial;

---

second wound, which entered her head just above her left ear and continued through her brain, was a "contact range wound," meaning the gun had made contact with the victim's head when the gun was fired. After being transported to the hospital and undergoing emergency surgery, the victim ultimately died as a result of the gun shot wounds.

After fleeing his residence with the gun, Shipe threw the gun into a river and drove to his sister's house in West Virginia, where he was ultimately apprehended. An investigator testified that upon tracking down and approaching Shipe in West Virginia, Shipe exited his car and said, "I give up." When asked about the weapon, he told the investigator, "You don't have to worry about that. It has been take care of." The investigator also testified that Shipe later told the police that he threw the gun into a river or creek. Two jailhouse informants testified that Shipe told them that he shot the victim and threw the gun into a river. Shipe's son also testified that Shipe told him that Shipe and the victim had argued, had been struggling, and she had been shot.

Shipe argued that the prosecution did not meet its burden of proving him guilty beyond a reasonable doubt and that the case was "full of holes." Shipe noted that crime scene had been disturbed before the police arrived and that no one ever tested the victim's hands for gun shot residue before or after she was taken in for emergency surgery. Shipe argued that the victim was intoxicated and angry at the time she was shot and suggested that she could have shot herself. Shipe explains his fleeing the scene as a result of being scared and poor judgment.

2

7. Trial counsel was ineffective in failing to interview Tonya Ambrose Holliday, who tended to the victim until police arrived;

8. Trial counsel was ineffective in failing to request criminal history reports of two witnesses for the Commonwealth, William Lindamood and Norman Haley;

9. The prosecutor committed perjury and misled the jury during his opening statement by telling the jury that Lindamood did not receive immunity for his testimony and did not have any connection to the case;

10. Trial counsel was ineffective in failing to object to Lindamood's perjured testimony;

11. The prosecutor committed perjury and misled the jury during his opening statement by telling the jury that Haley did not receive immunity for his testimony and did not have any connection to the case;

12. Trial counsel was ineffective in failing to object to Haley's perjured testimony;

13. Lindamood committed perjury at trial because he did not reveal that he had been recruited to talk to petitioner and elicit incriminating statements;

14. Shipe's conversation with Lindamood violated his Fifth Amendment rights under Miranda;

15. Lindamood's statements cannot be credited because Lindamood remained on bond for unrelated charges despite testing positive for drug use and because Shipe alleges that he never spoke with Lindamood;

16. Trial counsel was ineffective in failing to object that Shipe's due process rights were violated when Lindamood spoke to Shipe and in failing to move for a mistrial on that basis;

17. The prosecution withheld evidence from Shipe, namely letters from Haley asking for relief from his charges in exchange for his testimony against Shipe;

18. Trial counsel was ineffective in failing to introduce Haley's letters at trial;

19. Haley's testimony was contradictory and was inconsistent with other evidence elicited at trial;

20. Trial counsel was ineffective in failing to object to Haley's inconsistent testimony and in failing to move for a mistrial on these grounds;

21. The evidence was insufficient to convict Shipe of first-degree murder;

22. Trial counsel was ineffective in failing to request a jury instruction on immunity for jailhouse informants;

23. Trial counsel was ineffective in failing to request a jury instruction regarding Shipe's level of intoxication being so great as to make him incapable of premeditation;

24. Trial counsel was ineffective in failing to present mitigating witnesses;

25. Trial counsel was ineffective in failing to move for a continuance of Shipe's case in order to obtain previously undisclosed exculpatory evidence, to obtain a trajectory expert, and to review discovery materials;

26. Appellate counsel was ineffective in failing to invoke the ends of justice exception regarding Shipe's failure to preserve the issues related to the withholding of exculpatory evidence.

The Supreme Court of Virginia dismissed Shipe's petition on May 8, 2009, finding that his claims of ineffective assistance of counsel failed under Strickland v. Washington, his claim regarding the sufficiency of the evidence was not properly raised in habeas because the issue had already been addressed on direct appeal, and that Slayton v. Parrigan barred his remaining claims. Shipe then filed his current federal habeas petition, raising the same claims that he raised in the Supreme Court of Virginia.

## II.

This court may not grant relief on any claim that the state courts have adjudicated on the merits unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2); see Williams v. Taylor, 529 U.S. 362, 376-77 (2000).[2]

---

[2] Shipe's petition is governed by 28 U.S.C. § 2254 and chapter 154 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. §§ 2261-66. In almost all circumstances, petitioners under § 2254 must exhaust all available state court remedies before seeking relief in federal court. § 2254(b). When reviewing a claim adjudicated

This court concludes that the Supreme Court of Virginia's adjudications of Shipe's sufficiency of the evidence and ineffective assistance of counsel claims were not contrary to, or an unreasonable application of, clearly established federal law, and were not based on an unreasonable determination of the facts. Therefore, the court dismisses these claims.

## A.

*Sufficiency of the Evidence Claim*

Shipe alleges that the evidence is insufficient to support his conviction of first-degree murder. The Court of Appeals of Virginia adjudicated his sufficiency of the evidence claim and rejected it, finding that there was sufficient evidence to support a finding of guilt beyond a reasonable doubt.[3] This court finds that the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Therefore, the court dismisses the claim.

Federal habeas review of a claim challenging the constitutional sufficiency of the evidence supporting a conviction is limited to determining "whether, after viewing the evidence in the light

---

on the merits by a state court a federal court may grant habeas relief only if the state court adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." §§ 2254(d)(1), (d)(2). A state court adjudication is considered contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision unreasonably applies clearly established federal law if the court identifies the correct legal principle, but unreasonably applies it to the facts of the case. Id. at 413. It is not enough that a state court applied federal law incorrectly; relief may only be granted if the application of federal law is unreasonable. Id. at 411. Factual determinations made by the state court are "presumed to be correct," and the petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." § 2254(e)(1).

[3] In refusing Shipe's petition for appeal on direct review, the Supreme Court of Virginia, in effect, adjudicated Shipe's claim regarding the sufficiency of the evidence. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Thomas v. Davis, 192 F.3d 445, 453 n.6 (4th Cir. 1999).

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In determining whether the state court reasonably applied this principle, the federal habeas court must determine whether the state court's decision is minimally consistent with the record, Bell v. Jarvis, 236 F.3d 149, 159 (4th Cir. 2000) (en banc), and must give deference to the findings of fact made by both the trial and appellate courts, 28 U.S.C. § 2254(d); Howard v. Moore, 131 F.3d 399, 406 (4th Cir. 1997) (citing Sumner v. Mata, 449 U.S. 539, 546-47 (1981)). The federal court does not weigh the evidence or consider the credibility of witnesses. United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983).

In addressing the sufficiency of the evidence, the Court of Appeals of Virginia found that:

On July 13, 2003, Lisa Kritzer was shot to death at [Shipe's] home, where she had been living with [Shipe]. Kritzer sustained one gunshot wound to the lower face. A second gunshot wound, which was fatal, was on the left side of Kritzer's head and contained soot, indicating that it was a contact wound.

Just before she was shot, Kritzer's ten-year-old son, [CF] heard [Shipe] and Kritzer arguing about [CF] coming to live with them. [Shipe] took bottles of wine away from Kritzer and pushed her against the exterior of the house. He went inside and locked Kritzer and [CF] out of the house. When [Shipe] refused to admit them to the house, Kritzer forced her way inside. As Kritzer and [CF] were gathering their belongings, [Shipe] and Kritzer began arguing again. Kritzer told [CF] to call the police from the neighbor's home.

[CF] went next door and asked a neighbor to call the police. As [CF] was returning to [Shipe's] home, he saw [Shipe] run out the front door, get into his car, and drive away quickly. When [CF] entered the home, he found his mother had been shot.

The police subsequently apprehended [Shipe] near his sister's home in West Virginia. When the police asked him about the firearm, [Shipe] said he had thrown it into a river. [BS], [Shipe's] son, testified that after [Shipe] fled to West Virginia, he said he and Kritzer had gotten into a fight, they had been struggling, and that she was shot.

6

William Lindamood was incarcerated with [Shipe] after his arrest. Lindamood testified that [Shipe] had said he and Kritzer had gotten into an argument regarding her drinking. Kritzer refused to stop drinking, so [Shipe] said, "I will shoot you, bitch." Kritzer told [Shipe] to go ahead and do it. [Shipe] got out his gun and shot Kritzer. Afterward, [Shipe] fled to West Virginia and threw the gun in a river. Lindamood admitted having prior felony convictions.

Norman Haley was in a courtroom holding cell with [Shipe] in October of 2004. When Haley asked about [Shipe's] crime, [Shipe] said he had killed his girlfriend. [Shipe] said he and his girlfriend had gotten into a fight about her son coming to live with them, and the argument became heated. [Shipe] went to his car, got his gun, and shot her twice in the head. [Shipe] believed he would not be convicted because the police could not find the gun, which he had thrown into a river. Haley admitted having felony convictions, and that he was serving a twenty-six-year sentence at the time of [Shipe's] trial.

[Shipe] introduced evidence that Kritzer's blood alcohol content at the time of her death was .11%. The presence if benzodiazepines also was detected in Kritzer's blood. Dr. Kenneth Brassfield opined that the presence of alcohol and benzodiazepines in the blood could produce dramatic mood swings and an inability to control mood swings.

The Court of Appeals held that, when considering all the facts and circumstances of the case, the evidence was sufficient to prove beyond a reasonable doubt that Shipe acted with premeditation sufficient to convict Shipe of first-degree murder, and the Supreme Court of Virginia rejected his appeal. The court finds that, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of first degree murder beyond a reasonable doubt.[4] In the light most favorable to the Commonwealth, Shipe threatened to shoot Kritzer, got his gun, and shot her twice – once up close and once at a distance. Under the circumstances, a rational jury could have concluded that the homicide was deliberate and

---

[4] In Virginia, first degree murder is "murder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate or animate object sexual penetration, robbery, burglary or abduction." Va Code § 18.2-32.

premeditated. Accordingly, the court finds that the state court's adjudication was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Therefore, the court dismisses this claim.

## B.

### Ineffective Assistance of Counsel Claims

Shipe claims that counsel provided ineffective assistance in failing to: investigate and prepare adequately for trial; request exculpatory or impeachment evidence from the prosecutor; properly review the Commonwealth's evidence, and therefore, failing to notice and subsequently test the hair follicles that were introduced at trial; interview Tonya Ambrose Holliday, who tended to the victim until police arrived; request criminal history reports of two witnesses for the Commonwealth, William Lindamood and Norman Haley; object to Lindamood's perjured testimony; object to Haley's perjured testimony; object that Shipe's due process rights were violated when Lindamood spoke to petitioner and in failing to seek a mistrial on that basis; introduce Haley's letters at trial; object to Haley's inconsistent testimony and in failing to move for mistrial on these grounds; request a jury instruction on immunity for jailhouse informants; request a jury instruction regarding Shipe's level of intoxication being so great as to make him incapable of premeditation; present mitigating witnesses; move for a continuance of his sentencing in order to obtain previously undisclosed exculpatory evidence, to obtain a trajectory expert, and to review discovery materials; and invoke the ends of justice exception regarding Shipe's failure to preserve the issues related to the withholding of exculpatory evidence. The Supreme Court of Virginia adjudicated and rejected all of Shipe's ineffective assistance claims, finding that they failed under both the "performance" and "prejudice" prongs of the two-part test established in Strickland v. Washington, 466 U.S. 668 (1984).

This court finds that the state court's adjudication of these claims was not based on an unreasonable determination of the facts and did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the court dismisses Shipe's ineffective assistance of counsel claims.

In order to establish a claim of ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficiency prejudiced his defense. Strickland, 466 U.S. at 687. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." Id. at 688. There is a strong presumption that an attorney is acting reasonably. Id. at 688-89. To establish prejudice to his defense, a petitioner must demonstrate that but for his attorney's errors, there is a reasonable probability that the outcome of the trial would have been different. Id. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." Id.

When evaluating claims of ineffective assistance of counsel, federal habeas relief "may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by Strickland . . . ." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009). "Under the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard," "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Id. at 1420 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied the standard." Id.

*1. Failure to investigate and prepare adequately for trial (Claim 1)*

Shipe alleges that trial counsel was ineffective in failing to investigate and prepare adequately for trial. In support of this claim, Shipe relies on a motion for a continuance, in which counsel stated he had not had adequate time to prepare, and motion for a replacement of the previous court-appointed investigator. Shipe contends that counsel's submission of these motions demonstrates that counsel was not prepared and that Shipe was denied ineffective assistance. The Supreme Court of Virginia rejected this claim, finding that it failed both prongs of Strickland because Shipe did not identify "any information counsel would have obtained had counsel conducted further investigation or preparation . . . or any act or omission of counsel that resulted from counsel's alleged lack of preparation." Based on its findings, the court determined that Shipe failed to demonstrate that counsel's performance was deficient or that there was a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

The record shows that trial counsel moved for a continuance because he was having difficulty communicating with the defense investigator who was to interview the defense witnesses and because he had another jury trial set in federal court in the days immediately preceding Shipe's trial. The investigator indicated to trial counsel that he would begin his interview of some 20 witnesses 9 days before trial was set to begin. Trial counsel requested additional time to hire a different investigator. The trial court denied trial counsel's motion for a continuance because the court had previously granted a continuance to allow an expert additional time to prepare.

Based on the record and Shipe's failure to identify any information that counsel could have discovered through further investigation or preparation that might have resulted in a different outcome, this court finds that the state court's adjudication did not result in a decision that was

10

contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Accordingly, the court dismisses this claim.

*2. Failure to request exculpatory or impeachment evidence from the prosecutor (Claim 3) and failure to properly review the Commonwealth's evidence (Claim 6)*

Shipe alleges that counsel was ineffective in failing to request exculpatory or impeachment evidence from the prosecutor and in failing to properly review the Commonwealth's evidence, and therefore, failing to notice and subsequently test the hair follicles that were introduced at trial. These claims are directed at the toxicology report analyzing the victim's blood after her death, which revealed both alcohol and drugs in her system. In adjudicating this claim, the Supreme Court of Virginia found that the record demonstrated "that the victim was taking mood-altering medication. [Shipe] proffer[ed] letters indicating that the length of time between the victim's hospitalization and her death prevented the toxicologist from getting a more accurate assessment, but [Shipe] did not identify what information additional or more accurate toxicology testing or testing of hair follicles would have revealed." Therefore, that court found Shipe failed to demonstrate that counsel's performance was deficient or that there was a reasonably probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Because Shipe failed to allege how any additional testing relating to the victim would have resulted in more favorable evidence or would have impacted the outcome of trial, the court finds that the Supreme Court of Virginia's adjudication of these claims was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Accordingly, the court dismisses these claims.

*3. Failure to interview Tonya Ambrose Holliday (Claim 7)*

Shipe claims that counsel provided ineffective assistance when he failed to interview Tonya

Ambrose Holliday, the woman who tended to the victim at the scene until police arrived, regarding a bullet casing she found on the floor and moved. In support of this claim, Shipe provides an affidavit from Holliday. Holliday avers that she moved a bullet casing,[5] that she told someone outside the house, and that counsel was aware of the information she could have provided but counsel did not ask her about it prior to trial or while Holliday was testifying. Shipe contends that this information would have shown that his version of the events was true because the bullet had been on the other side of the victim before it was moved.[6] In adjudicating this claim, the Supreme Court of Virginia found that the record demonstrated "that counsel explored the fact that the crime scene had been disturbed prior to the arrival of police." The court further found that "Holliday's testimony that she moved a single bullet casing would have merely been cumulative" of the evidence presented. Therefore, the court found that Shipe had failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

The examination of witnesses is an area of trial strategy left to the discretion of trial counsel. Strickland, 466 U.S. at 689-90. Counsel is not ineffective merely because he overlooks one [trial] strategy while vigilantly pursuing another." Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987). The record reveals that Holliday testified at trial as a defense witness. Although trial counsel did not

---

[5] In her affidavit, Holliday refers to the bullet casing as an "unfired bullet"; however, there is no evidence that any unfired bullets were recovered from the scene of the crime and Holliday does not state that she took the "unfired bullet," only that she moved it. Accordingly, the court presumes, as the Supreme Court of Virginia apparently did, that she is referring to a bullet casing. Even if Holliday meant to say "unfired bullet," however, Shipe has not demonstrated how producing evidence of an unfired bullet would have been exculpatory or would have changed the outcome of his trial. Thus, his claim would nevertheless fail.

[6] Shipe argues that this evidence would have demonstrated that Shipe could not have entered the front door and shot the victim from there as the Commonwealth suggested.

12

question Holliday regarding her moving a bullet casing, the information that Shipe sought to be introduced through Holliday, namely that others had tampered with evidence at the crime scene before police arrived, already had been explored by trial counsel on cross-examination of Kevin Whitacre, a prosecution witness. Whitacre, a fire and rescue worker responding to the crime scene to render medical attention to the victim, testified that he had disturbed the crime scene, including turning a couch in the room on its end, in the course of rendering that aid. This court finds that, based on the record and Shipe's allegations, the Supreme Court of Virginia's adjudication did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Accordingly, the court dismisses this claim.

*4. Failure to request criminal history reports of two witnesses for the Commonwealth (Claim 8)*

Shipe claims that counsel was ineffective in failing to request criminal history reports of two jailhouse informants and witnesses for the Commonwealth, William Lindamood and Norman Haley. Shipe concedes that trial counsel was provided the criminal history reports of these two witnesses in Shipe's first trial, but maintains that the Commonwealth failed to update those reports before his second trial. In adjudicating this claim, the Supreme Court of Virginia found that the record demonstrated "that the criminal history reports were updated during the second trial and that this information was available to and used by counsel during his examination of Lindamood and Haley." Accordingly, the court found that Shipe had failed to demonstrate either deficient performance by counsel or resulting prejudice. Because the record belies Shipe's allegation, the court finds that the state court's adjudication of this claim was not contrary to, or an unreasonable application, of clearly established federal law and was not based on an unreasonable determination of the facts. Therefore,

the court dismisses this claim.

*5. Failure to object to Lindamood's perjured testimony (Claim 10)*

Shipe alleges that counsel was ineffective in failing to object to Lindamood's allegedly perjured testimony and in failing to use this as a basis to move for a mistrial. Lindamood was a jailhouse informant who testified that Shipe told him that Shipe and the victim argued regarding her drinking and when the victim refused to stop drinking, Shipe told her, "I will shoot you, bitch." According to Lindamood, Shipe also said that the victim told Shipe to go ahead and do it, so Shipe retrieved his gun from his car, shot her twice in the head, threw the gun in a river, and fled to West Virginia. Shipe argues that Lindamood committed perjury because Lindamood did not reveal that he had been "recruited" to talk to Shipe. In adjudicating this claim, the Supreme Court of Virginia held that the record demonstrated that "Lindamood testified that he received no benefit for his testimony and [Shipe provided] no evidence that this testimony was false." Further, the court found that "counsel presented impeachment evidence by questioning witnesses that had supervised Lindamood while he was out on bond. These witnesses established that Lindamood repeatedly tested positive for drug use and remained out on bond despite numerous requests that his bond be revoked, and that Lindamood had said he was being protected because he was a 'key' witness for the Commonwealth." Based on the foregoing, the state court determined that Shipe had failed to demonstrate that counsel's performance was deficient or that, but for counsel's alleged errors, the outcome of the proceeding would have been different.

Shipe presents a copy of a hand-written plea agreement wherein Lindamood agreed to plead guilty to driving after being declared a habitual offender, second or subsequent offense, and to serve 12 months of active jail time on the offense. Shipe apparently believes that this plea agreement

demonstrates that Lindamood received a benefit for his testimony at Shipe's trial. However, nowhere in the agreement does Lindamood agree to testify in Shipe's trial and nowhere in the agreement does it indicate that Lindamood received favorable treatment for anything other than his agreement to forgo his own trial. Shipe points to no other "benefit" that Lindamood received as a result of his testimony at Shipe's trial other than that revealed by counsel's cross-examination. Bald, conclusory allegations are not sufficient to support a claim for habeas relief. Nickerson v. Lee, 971 F.2d 1125, 1126 (4th Cir. 1992). Without any evidence demonstrating that Lindamood's testimony was false, trial counsel had no grounds to move for mistrial. See Clanton v. Bair, 836 F.2d 1354, 1359 (4th Cir. 1987) (finding that counsel is not ineffective in failing to raise an objection or make a motion for which there is "no obvious basis"). Accordingly, this court finds that the state court's adjudication was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Thus, the court dismisses this claim.

*6. Failure to object to Haley's perjured testimony (Claim 12)*

Shipe alleges that counsel provided ineffective assistance in failing to object to Haley's allegedly perjured testimony. Haley was another jailhouse informant who testified that Shipe told him that Shipe had killed his girlfriend after they argued about her son coming to live with them. According to Haley, Shipe told Haley that the argument became heated, Shipe went to his car, got his gun, and shot his girlfriend twice in the head. Shipe also told Haley that he did not believe that he would be convicted because the police could not find the gun, which Shipe had thrown into a river. Shipe argues that Haley testified falsely that he did not have an agreement with the prosecution in exchange for his testimony. In adjudicating this claim, the Supreme Court of Virginia

found that, contrary to Shipe's assertion, the record demonstrated "that Haley testified that he was testifying against [Shipe] according to a plea agreement he had with the Commonwealth." Therefore, the court found that Shipe's claim failed both prongs of <u>Strickland</u>. Because the record belies Shipe's claim, this court finds that the state court's adjudication was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Therefore, the court dismisses this claim.

*7. Failure to object that Shipe's due process rights were violated when Lindamood spoke to petitioner (Claim 16)*

Shipe argues that counsel was ineffective in failing to object and seek a mistrial on the ground that Shipe's due process rights were violated when Lindamood, a jailhouse informant, spoke to petitioner. In adjudicating this claim, the state court found that "an objection that [Shipe's] due process rights were violated by Lindamood speaking to [him] would have been futile as the record reveals no evidence that Lindamood elicited [Shipe's] incriminating remarks." The Supreme Court of Virginia held that counsel could not be ineffective for failing to raise a futile objection, and thus, Shipe's claim failed under both prongs of <u>Strickland</u>.

No due process violation occurs when incriminating statements are given voluntarily by the defendant and the police and the informant take no action to elicit the incriminating . . <u>Kuhlmann v. Wilson</u>, 477 U.S. 436 (1986); <u>Thomas v. Cox</u>, 708 F.2d 132 ( 4th Cir. 1983) (informer inmate is not a state agent). Because there was no evidence that Lindamood elicited Shipe's incriminating remarks, the Supreme Court of Virginia could have reasonably concluded that counsel was not ineffective in failing to object or move for a mistrial. <u>Clanton</u>, 826 F.3d at 1359. Accordingly, this court finds that the state court's adjudication was not contrary to, or an unreasonable application of,

clearly established federal law and was not based on an unreasonable determination of the facts. Therefore, the court dismisses this claim.

*8. Failure to introduce Haley's letters at trial (Claim 18)*

Shipe alleges that counsel provided ineffective assistance in failing to introduce, at trial, letters that Haley wrote to the prosecution seeking favorable treatment in exchange for his testimony against Shipe. Shipe argues that Haley's letters would have proven that Haley was simply trying to get out of prison by testifying against Shipe. In adjudicating this claim, the Supreme Court of Virginia found that the record demonstrated "that Haley testified that he was testifying against [Shipe] according to a plea agreement he had with the Commonwealth." Accordingly, the court found that Shipe had failed to demonstrate that counsel's performance was deficient or that, but for counsel's alleged error, the outcome of the proceeding would have been different.

In addition to demonstrating that Haley did testify regarding his agreement with the Commonwealth, the trial transcript demonstrates that trial counsel questioned Haley specifically about a letter that he wrote to the prosecution offering to "wear a wire" to get information from Shipe, in exchange for assistance with charges pending against him in Loudoun County. The letter was entered into evidence as a defense exhibit. Accordingly, the court finds that the state court's adjudication was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Therefore, the court dismisses his claim.

*9. Failure to object to Haley's inconsistent testimony (Claim 20)*

Shipe contends that counsel was ineffective in failing to object to Haley's inconsistent testimony and in failing to move for a mistrial on this ground. In adjudicating this claim, the

Supreme Court of Virginia noted that counsel called a witness to impeach Haley's testimony and to demonstrate Haley's inconsistencies. Defense witness, David Dill, testified at trial that the conversation between Haley and Shipe never took place. Because the record belies Shipe's contentions, the state court found that Shipe had demonstrated neither prong of Strickland. This court finds that the state court's adjudication was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Therefore, the court dismisses his claim.

*10. Failure to request a jury instruction concerning jailhouse informants who testify in exchange for immunity (Claim 22) and failure to request a jury instruction regarding intoxication and the element of premeditation (Claim 23)*

Shipe claims that counsel provided ineffective assistance when he failed to request a special credibility instruction regarding jailhouse informants who testify in exchange for immunity [7] and failed to request a jury instruction regarding intoxication and the element of premeditation. In adjudicating these claims, the Supreme Court of Virginia held that Shipe "fail[ed] to articulate a valid legal basis upon which either instruction could have been granted." The court found that "[n]o evidence in the record demonstrated that [Shipe] was so greatly intoxicated that he was incapable of premeditation," and it found that the record demonstrated "that Lindamood's and Haley's testimony was supported by corroborating evidence." Based on the foregoing, the court found that

_____

[7] Shipe contends that counsel should have proffered the following instruction:

The testimony of one who provided evidence against a defendant as an informant for immunity from punishment or for personal advantages, must always be examined and weighed by the jury with greater care and caution than the testimony of [an] ordinary witness. You, the jury, must decide whether the witnesses['] testimony has been affected by the outcome of the case, or by prejudice against the defendant, or as a result of being immunized from prosecution. You should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

Shipe failed to demonstrate that counsel's performance was deficient or that he was prejudiced by counsel's alleged errors.

The decision regarding what jury instructions should be tendered to the trial court is ordinarily a matter of trial tactics that is left to the sole discretion of trial counsel. See Gonzalez v. U.S., 553 U.S. 242, 249-50 (2008) (determining what "arguments to advance" at trial lies solely within the province of counsel); Taylor v. Illinois, 484 U.S. 400, 418 (1988). "Monday morning quarterbacking" of counsel's tactics is not sufficient to show ineffective assistance of counsel. Stamper v. Muncy, 944 F.2d 170, 178 (4th Cir. 1991). "The burden is on the proponent of a jury instruction to satisfy the trial court that the proposed language is a correct statement of the law, applicable to the facts of the case on trial, and expressed the appropriate language." Shaikh v. Johnson, 666 S.E.2d 325, 329 (Va. 2008). According to the Supreme Court of Virginia, the instructions that Shipe contends his counsel should have requested were not supported by the evidence in the record. Although the Fourth Circuit has held in a 28 U.S.C. § 2255 proceeding that counsel provided ineffective assistance at trial when he failed to request a jailhouse informant instruction where the informant was paid and where there was little or no evidence corroborating the jailhouse informant's testimony, see United States v. Luck, 611 F.3d 183 (4th Cir. 2010), in this case, there was corroborating evidence and testimony from multiple witnesses, neither jailhouse informant was paid, and, according to the evidence, Lindamood received nothing in exchange for his testimony. Regarding the instruction that Shipe was intoxicated at the time of the shooting, there was no evidence introduced at trial to suggest that Shipe, in fact, was intoxicated. Moreover, Shipe did not present any evidence of this intoxication at the time of the shooting in his state habeas petition. Therefore, the Supreme Court of Virginia could have reasonably concluded that it would

have been futile for counsel to request these instructions, and counsel is not ineffective in failing to make a futile argument. See Clanton, 826 F.2d at 1359. Accordingly, the court finds that the state court's adjudication of these claims was neither contrary to nor involved an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts. Thus, the court dismisses these claims.

*11. Failure to present mitigating witnesses (Claim 24)*

Shipe contends that trial counsel was ineffective in failing to present mitigating witnesses at sentencing. Shipe argues that counsel should have presented witnesses to testify as to Shipe's character, credibility, and peaceful nature. In adjudicating this claim, the state court found that Shipe failed "to identify any of the witnesses or evidence he contends counsel should have presented in mitigation," and thus, his claim failed under Strickland.

Shipe cannot establish prejudice resulting from counsel's failure to call a witness unless he makes an affirmative showing what that witness would have said. Burger v. Kemp, 483 U.S. 776, 793 (1987) (holding that petitioner could not show prejudice where he did not submit an affidavit from the witness establishing that the witness would have offered substantial mitigating evidence if he had testified). In order to demonstrate prejudice, a petitioner must not only show that the testimony would have been favorable, but also that the witness would have testified. Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985). In this case, Shipe has not demonstrated that any witnesses would have testified or that his or her testimony would have been favorable. Accordingly, the court finds that the state court's adjudication was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Therefore, the court dismisses this claim.

*12. Failure to move for a continuance (Claim 25)*

Shipe argues that counsel was ineffective in failing to move for a continuance of the case in order to obtain previously undisclosed exculpatory evidence, to obtain a trajectory expert, and to review discovery materials. In adjudicating this claim, the Supreme Court of Virginia found that Shipe failed "to proffer what a trajectory expert would have found, and fail[ed] to identify with specificity the exculpatory or discovery materials he contends counsel should have obtained." Therefore, the court found that Shipe's claim failed under both prongs of <u>Strickland</u>.

Without a specific showing of what the missing evidence or testimony would have been, Shipe cannot demonstrate either that trial counsel's performance was deficient or that he was prejudiced by any alleged error. <u>See</u> <u>Beaver v. Thompson</u>, 93 F.3d 1186, 1195 (4th Cir. 1996); <u>Anderson v. Collins</u>, 18 F.3d 1208, 1221 (5th Cir. 1994). Accordingly, the court finds that the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Therefore, the court dismisses this claim.

*13. Failure to invoke the ends of justice exception regarding Shipe's failure to preserve the issues related to the withholding of exculpatory evidence (Claim 26)*

On direct appeal, the Court of Appeals of Virginia denied Shipe's claim that his due process rights were violated when the Commonwealth failed to disclose exculpatory evidence because the issue was not raised at trial and, thus, not preserved for appeal. <u>See</u> Va. Sup. Ct. R. 5A:18. Rule 5A:18 provides, in relevant part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

Shipe claims that appellate counsel was ineffective in failing to request the Court of Appeals to "invoke the ends of justice exception" on appeal regarding Shipe's failure to preserve a Brady issue at trial. In adjudicating this claim on habeas review, the Supreme Court of Virginia found that Shipe failed "to identify how the requirements for attaining the ends of justice exception could have been met in light of the overwhelming evidence of [Shipe's] guilt." The court found that the record demonstrated that "[Shipe] and the victim were fighting when the victim told her 10-year-old son to run to a neighbor and call the police. When the victim's son returned, he saw [Shipe] run from the house and leave in a car; the victim's son then found the victim had been shot. [Shipe], thereafter, told his son and, later, two inmates, that he had shot the victim and thrown the gun in a river." Accordingly, the Supreme Court of Virginia determined that Shipe failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result fo the proceeding would have been different.

According to the Supreme Court of Virginia, "[t]he ends of justice exception to Rule 5A:18 is narrow and is to be used sparingly." Copeland v. Commonwealth, 592 S.E.2d 391, 399 (2004). "In order to avail oneself of the exception, a[n appellant] must affirmatively show that a miscarriage of justice has occurred, not the a miscarriage of justice might have occurred." Brown v. Commonwealth, 380 S.E.2d 8, 11 (1989). Such a showing "requires proof of an error that was 'clear, substantial and material.'" Copeland, 592 S.E.2d at 399 (quoting Brown, 380 S.E.2d at 111). "In examining a case for miscarriage of justice, [the Court of Appeals of Virginia] . . . determine[s] whether the record contains affirmative evidence of innocence or lack of a criminal offense." Tooke v. Commonwealth, 627 S.E.2d 533, 536 (2006) (quoting Lewis v. Commonwealth, 596 S.E.2d 542, 546 (2004), rev'd on other grounds, 608 S.E.2d 907 (2005)). Because Shipe has not demonstrated

"any affirmative evidence of innocence or lack of a criminal offense," he cannot show that counsel's failure to raise the ends of justice exception in the Court of Appeals was deficient performance or that it resulted in prejudice. Therefore, the court finds that the Supreme Court of Virginia's adjudication was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Therefore, the court dismisses this claim.

### III.

The Supreme Court of Virginia dismissed all of Shipe's remaining claims as procedurally defaulted under Slayton v. Parrigan, 205 S.E.2d 680 (1974), because Shipe could, but failed to, raise the claims at trial and on direct appeal. This court finds that Slayton is an independent and adequate state procedural rule which bars federal habeas review unless a showing of cause and prejudice or a miscarriage of justice excuses the procedural default. Because Shipe offers nothing to excuse the default, the court dismisses the remaining claims.[8]

A claim is defaulted where the state court expressly finds that review is barred by an

---

[8] To the extent Shipe's petition can be construed as raising any new claims that were not presented to the state court, those claims are barred from federal habeas review. "[A] federal court may not grant a writ of habeas corpus to a petitioner in a state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000); see O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). In this case, any new claims in Shipe's federal habeas petition were not presented to the Supreme Court of Virginia. However, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to state court." Baker, 220 F.3d at 288; see Gray v. Netherland, 518 U.S. 152, 161 (1986). If Shipe were to attempt to raise any new claims to the Supreme Court of Virginia now, that court would find the claims are procedurally barred. See Va. Code §§ 8.01-654(A)(2) (setting the time requirements for the filing of a habeas petition) and (B)(2) (requiring habeas petitioners to raise all available grounds for relief in their first state petition for a writ of habeas corpus); and Slayton v. Parrigan, 205 S.E.2d 680 (1974) (claims that could have been raised at trial and on direct appeal but were not are procedurally defaulted). Consequently, any new claims would now be simultaneously exhausted and procedurally barred from federal habeas review, Teague v. Lane, 489 U.S. 288, 297-99 (1989); Basette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990); Sparrow v. Dir., Dep't of Corr., 439 F. Supp.2d 584, 587-88 (E.D. Va. 2006), unless he shows either (1) cause and prejudice or (2) a miscarriage of justice, Coleman, 501 U.S. at 750. In this case, nothing in the record would remotely support a claim of actual innocence and Shipe offers nothing to excuse his procedural default. Accordingly, the court finds that any new claims would be barred from federal habeas review.

independent and adequate state procedural rule. Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998); see also Lambrix v. Singletary, 520 U.S. 518, 523 (1997). Whether a rule is independent and adequate is a question of federal law. Henry v. Mississippi, 379 U.S. 443, 447 (1965). "A state procedural rule is adequate if it is regularly or consistently applied by the state courts, Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and it is independent if it does not depend on a federal constitutional ruling, Ake v. Oklahoma, 470 U.S. 68, 75 (1985)." McNeill v. Polk, 476 F.3d 206, 211 (4th Cir. 2007). Therefore, a violation of "firmly established and regularly followed state rules" is adequate to foreclose review. Lee v. Kemna, 534 U.S. 362, 375 (2002). The Fourth Circuit has recognized Slayton as an independent and adequate procedural rule that renders the claim procedurally defaulted in this court. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006); see also Wright v. Angelone, 151 F.3d 151, 159-60 (4th Cir. 1998); Mu'min v. Pruett, 125 F.3d 192, 196 (4th Cir. 1997), cert. denied, 522 U.S. 978 (1997); Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir. 1996), cert. denied, 519 U.S. 1002 (1996); Spencer v. Murray, 18 F.3d 229, 232 (4th Cir. 1994).

However, a state prisoner can obtain federal habeas review of a procedurally defaulted claim if he shows either (1) cause and prejudice or (2) a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show cause, a petitioner must demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. Id. at 488. The "miscarriage of justice" exception is a narrow exception to the cause requirement. A habeas petitioner falls within this narrow exception if he can demonstrate that a constitutional violation has "probably resulted" in the conviction of one

who is "actually innocent" of the substantive offense. Id. at 496. In this case, Shipe offers nothing to excuse his procedural default. Accordingly, the court dismisses Shipe's remaining claims.

## IV.

For the reasons stated, the court grants respondent's motion to dismiss and dismisses Shipe's § 2254 petition.

**ENTER**: This 24th day of September, 2010.

_____
United States District Judge